# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

| | | |
|---|---|---|
| REEF ENTERPRISES, *a Mississippi Corporation doing business as Jordan River Steamer* | § § § § § | PLAINTIFF |
| v. | § § | Civil No. 1:16cv22-HSO-JCG |
| WRIGHT NATIONAL FLOOD INSURANCE COMPANY, *formerly known as Fidelity National Indemnity Insurance Company, a Texas Corporation* | § § § § § § | DEFENDANT |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S [15] MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the Motion [15] for Summary Judgment filed by Defendant Wright National Flood Insurance Company, formerly known as Fidelity National Indemnity Insurance Company, a Texas Corporation.  This Motion is fully briefed.  Having considered the Motion, related pleadings, the record, and relevant legal authority, the Court is of the opinion that Defendant's Motion [15] for Summary Judgment should be granted, and that Plaintiff's claims should be dismissed with prejudice.

I. BACKGROUND

A.   Factual background

Plaintiff Reef Enterprises, Inc., a Mississippi corporation, doing business as Jordan River Steamer[1] ("Plaintiff" or "Reef"), held a Standard Flood Insurance Policy ("SFIP") from December 8, 2011, to December 8, 2012, issued by Defendant Wright National Flood Insurance Company, formerly known as Fidelity National Indemnity Insurance Company, a Texas Corporation ("Defendant" or "Wright"). *See* SFIP [1-2] at 1-22. Wright operated as a Write-Your-Own ("WYO") carrier participating in the National Flood Insurance Program ("NFIP"). *See* Policy Declarations [16-1] at 10; Aff. of Carolann Whitfield [16-1] at 2.

The SFIP issued to Plaintiff insured its non-residential property in Kiln, Mississippi, and included coverage of $500,000.00 for the building and $210,000.00 for contents. Policy Declarations [13-1] at 1. Plaintiff operated a restaurant at this location (the "Property"). Colonial's Final Report [16-1] at 94.

On August 28, 2012, "heavy rains associated with Hurricane Isaac caused a temporary and general condition of flooding" which damaged Plaintiff's building. *Id*. at 95. After receiving Plaintiff's flood claim, Defendant assigned Colonial Claims Corporation ("Colonial") to inspect the Property, which in turn assigned adjuster Ray Orlando ("Orlando"). Aff. of Carolann Whitfield [16-1] at 3. Orlando contacted Plaintiff on August 30, 2012, and inspected the Property with Plaintiff on

---

[1] The Complaint spells the same of the restaurant "Jordan River Steamer." Compl. [1] at 1, 2, 6. Other places in the record refer to it as being spelled "Jourdan River Steamer." *See* Favre Letter [16-1] at 98. The Court will employ the spelling used in the Complaint.

2

September 1, 2012.  *Id.*; Colonial's Final Report [16-1] at 95.  Plaintiff hired a public adjuster, Scott Favre, to advocate on its behalf.  *See, e.g.,* Plauche Letter [16-1] at 100; Favre Letter [16-1] at 99; Colonial's Final Report [16-1] at 97.

Orlando discovered that the Property had sustained two prior flood losses. Aff. of Carolann Whitfield [16-1] at 3; Colonial's Final Report [16-1] at 95.  One occurred during Hurricane Katrina in 2005, and the other on September 1, 2008. Colonial's Final Report [16-1] at 95.  "The insured was paid a total of $348,687.35" for these two prior losses.  *Id.*

"Orlando asked the Plaintiff to produce receipts and/or other evidence that the prior flood damages were repaired."  Aff. of Carolann Whitfield [16-1] at 3. Orlando reported to Wright that Reef's President, Hank Plauche, told him that Plauche had

> completed the work [for the prior losses,] and we said that was fine and informed him we would need the invoices for the repairs.  He told us he didn't have any receipts or they were destroyed in the flood.  We told him we might be able to use the photos from the prior to determine if repairs were made and then we asked him if he could give us the name of the contractor he used, to which he told us he couldn't remember his name.  We pressed the name of the contractor then asked if he did the work himself without a contractor and he told us yes.  We asked if his accountant might have some documentation from when he filed his taxes and the insured told us he didn't think so.  We finished our inspection and left.  Some time went by and we got nothing from the insured, then the prior came to us.  We reviewed the prior and noticed right away a lot of similarities in the contents and building items.

Colonial's Action Request [16-1] at 35.

On November 6, 2012, Plaintiff's public adjuster "compiled a packet of information to turn over to [Orlando]."  Favre Letter [16-1] at 98.  This included:

3

1. Ten pictures post Hurricane Gustav (09/2008) showing the scope of work that was completed by Jourdan [sic] River Steamer. Said pictures show an extensive scope of work including, but not limited to, flooring, electrical, sheetrock, plumbing, insulation, painting and rebuilding of bar. The business owner subcontracted the rebuild himself and a lot of the expenses are documented in the below printouts.
2. Receipts from Big Tray.
3. Breakdown of purchases from Associated Food & Equipment.
4. Breakdown of purchases from Cisco.
5. Breakdown of purchases from PayPal.
6. Breakdown of purchases from American Express.
7. Breakdown of purchases from QuickBooks from an array of Building Supply distributors and Equipment distributors. As you can see, Mr. Plauche has been replacing items from 2008 thru this date in an effort to recover from Hurricane Gustav.

*Id.*

Plaintiff submitted a signed Proof of Loss dated November 29, 2012, which sought $710,000.00 under the SFIP. Proof of Loss [16-1] at 103. On November 30, 2012, Orlando recommended that Wright reject the proof of loss. Orlando Report [16-1] at 102.

On January 8, 2013, Plaintiff's public adjuster forwarded a letter from Plauche to Wright and Colonial asking for a new adjuster to be assigned to the flood claim. Favre Letter [16-1] at 99; Plauche Letter [16-1] at 100. According to Plauche, "[w]e were asked for all receipts for that period and I told him that our files were flooded during the storm." Plauche Letter [16-1] at 100. According to Plauche, "[w]e have spent day after day compiling as much info as we could from venders and quick books and are able to back them up with canceled checks form [sic] the bank, but that just seems to fall and [sic] deaf ears." *Id.*

4

On January 17, 2013, Wright rejected the Proof of Loss. Wright Letter [16-1] at 104. Wright referred to items for which payment had been made for prior flood claims and which had not been repaired or replaced, citing the SFIP at section VII, General Conditions. *Id.* Wright informed Plaintiff

> [p]lease have your public adjuster continue to work with the independent adjuster to bring this claim to an amicable conclusion. Any documentation that you can provide to verify that repairs were made and/or replacements were purchased will be reviewed and judged on its merits.
>
> By stating the above, Fidelity National Indemnity Insurance Company does not waive any of its rights, but specifically reserves any and all of its rights under the policy of insurance and Federal Law.
>
> In accordance with **VII. GENERAL CONDITIONS, R. Suit Against Us**, should you wish to challenge Fidelity National Property and Casualty Insurance Company's position in this matter, you must file a lawsuit within 12 months of the denial of claim letter, and your lawsuit must be filed in federal court.

*Id.* at 105 (emphasis in original).

"Based on his observations and the documentation submitted by Plaintiff, Orlando prepared a building damage estimate in the amount of $137,925.98 RCV [Replacement Cost Value]; $111,560.41 ACV [Actual Cash Value] and a contents estimate of $102,815.97 RCV; $75,158.71 ACV." Aff. of Carolann Whitfield [16-1] at 4; *see also* Damage Estimate [16-1] at 43. On June 30, 2013, Orlando issued a Final Report to Wright. Final Report [16-1] at 94. Orlando explained that "[t]here are a few items we recommend for denial due to lack of documentation showing repaired or replaced. These items are also included in our estimate but have a $0.00 dollar amount." *Id.* at 95.

5

On July 10, 2013, Plaintiff executed another sworn Proof of Loss. Proof of Loss [16-1] at 106. In the new Proof of Loss, Plaintiff claimed a net amount under the policy of $186,719.12, *id.*, which matched the actual cash value total calculated by Wright's adjuster Orlando, *see* Damage Estimate [16-1] at 43. On July 11, 2013, Wright submitted a request to FEMA for a waiver for Plaintiff's late-signed Proof of Loss. E-Mail [22-1] at 1-2. Wright explained to FEMA that

> [t]he Proof of Loss is late mainly due to the length of time it took the insured to provide documentation that damages from a prior flood had been repaired. The adjuster wrote extremely detailed reports delineating each building item and [sic] that had been damaged in the prior flood. He then compared photographs from both floods in order to determine what exactly had been repaired and/or replaced within the time period between the two flood events. The same methodology was utilized with the contents portion of the claim. In addition the insured and his public adjuster took an inordinate amount of time to provide documentation to verify repairs and replacements.

*Id.* at 2.

FEMA responded to Wright's request on July 12, 2013, as follows:

> [b]ased on the information you submitted, your request for a waiver of the 60 day Proof of Loss policy provision is approved. *This limited waiver is for only the amount of the loss and scope of the damages outlined in this request and otherwise does not waive the proof of loss or any other requirement of the Standard Flood Insurance Policy and makes no other comment because of a lack of information.* If it is later determined that an improper payment was made, the granting of this waiver does not constitute a waiver of the right to see repayment of any such improperly paid amounts.

*Id.* at 1 (emphasis added). On July 12, 2013, Wright tendered checks to Reef for $111,560.41 and $75,158.71, for a total of $186,719.12. Checks [16-1] at 107-10.

One month later, on August 12, 2013, Plaintiff sent correspondence to Wright purportedly invoking appraisal under the SFIP. Reef Letter [16-1] at 113-14. On

August 30, 2013, Wright responded to Plaintiff acknowledging the August 12, 2013, letter, and advising that

> [t]he outstanding issues with this claim cannot be resolved through the appraisal process until a scope of damage has been agreed upon by all parties. In the event we agree on the scope of covered items and at that time if we cannot agree on the price of repair, you may exercise your option under Section VII-General Conditions, P; Appraisal of the policy for resolution of the claim.

Wright Letter [161-1] at 117.

On September 23, 2013, Plaintiff's public adjuster again requested appraisal under the SFIP "based on the scope provided by your independent adjuster." Favre Letter [16-1] at 119. According to the public adjuster, "there is no issue with scope. That issue has been resolved in the adjustment process. The only issue is pricing. The insured does not agree with your value on the value/cost as assigned by your company." *Id.*

According to Wright, "Plaintiff's public adjuster did not submit a repair estimate based on the scope of loss prepared by Colonial Claims nor did he provide any other documentation advising Wright of the price differences." Aff. of Carolann Whitfield [16-1] at 4. "Further, Plaintiff did not submit a supplemental Proof of Loss for the additional claimed amount owed." *Id.* at 5. "On this basis, Wright maintained its rejection of Plaintiff's appraisal request." *Id.*; *see also* Claim Log [16-1] at 18 (stating on October 22, 2013, "our letter of appraisal rejection still stands").

On January 31, 2014, Wright tendered payment to the Plaintiff in the amount of $7,950.00 for increased cost of compliance ("ICC") coverage under the SFIP. Check [16-1] at 111-12. On April 10, 2014, Plaintiff's attorney sent Wright

7

another letter requesting appraisal.  Farmer Letter [16-1] at 122.  Plaintiff's attorney asked Wright to "in good faith, engage in appraisal process pursuant to VII(P) of the Policy." *Id.* at 123.

Wright responded on April 16, 2014, stating "[i]n response please find copies of our letters dated 30 August 2013 and 17 January 2013." Wright Letter [16-1] at 127.  According to Wright, "[t]o date, Plaintiff has failed to submit a supplemental Proof of Loss that complies with Article VII(J)(4) of the SFIP, for any additional amounts claimed in this litigation." Aff. of Carolann Whitfield [16-1] at 5.

B.  Procedural history

Plaintiff filed a Complaint [1] in this Court on January 22, 2016, seeking to have Defendant "fully comply with the appraisal provisions" of the SFIP.  Compl. [1] at 5.  The Complaint asks the Court to compel Defendant "to fully cooperate with the appraisal provisions contained in the [SFIP]" and "enter any other orders required to allow the appraisal process to continue, including the Court's appointment of an independent umpire." *Id.* at 6.  The Complaint seeks "any such other, specific and/or general relief to which they [sic] may be entitled to in law, equity and good conscience." *Id.*

Wright now moves for summary judgment on four grounds: (1) Plaintiff did not timely file its lawsuit under the SFIP; (2) Plaintiff did not comply with all the requirements of the SFIP; (3) Plaintiff did not timely submit a supplemental Proof of Loss; and (4) appraisal is improper because coverage issues are or would have been involved.  Def.'s Mot. for Summ. J. [15] at 1-2.

8

II.  DISCUSSION

A.   Relevant legal standards

   1.   Summary judgment standard

Rule 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Savant v. APM Terminals*, 776 F.3d 285, 288 (5th Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  "In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party." *Id.*

   2.   The Standard Flood Insurance Policy

"The NFIP empowers the Federal Emergency Management Agency (FEMA) to issue an [SFIP], either directly or, as here, through private issuers known as [WYO] companies, which are statutorily authorized to act as fiscal agents of the United States." *Miller v. Am. Strategic Ins. Corp.*, No. 16-30251, 2016 WL 7118473, at *2 (5th Cir. Dec. 6, 2016) (citing 42 U.S.C. § 4071(a)(1); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir. 1998)).  "FEMA, through regulation, creates the [SFIP], which establishes 'the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders' and cannot 'be altered, varied, or waived without

the express written consent of [FEMA's] Federal Insurance Administrator.'" *Id.* (quoting *Marseilles Homeowners Condo. Ass'n v. Fidelity Nat'l Ins. Co.*, 542 F.3d 1053, 1054 (5th Cir. 2008) (per curiam); *Gowland,* 143 F.3d at 953; citing 42 U.S.C. § 4129; 44 C.F.R. pt. 61 app. A(1); 44 C.F.R. §§ 61.4(b) & 61.13(d)).

"An SFIP is a regulation of [FEMA], stating the conditions under which federal flood-insurance funds may be disbursed to eligible policyholders." *Ferraro v. Liberty Mut. Fire Ins. Co.*, 796 F.3d 529, 531 (5th Cir. 2015) (quotation omitted). "Disputes arising out of NFIP policies are governed by federal common law." *Constr. Funding, L.L.C. v. Fid. Nat. Indem. Ins. Co.*, 636 F. App'x 207, 209 (5th Cir. 2016) (citing *Spence v. Omaha Indem. Ins. Co.*, 996 F.2d 793, 796 (5th Cir. 1993)).

"Although WYO insurers administer SFIP policies, payments made pursuant to such policies are a direct charge on the public treasury." *Ferraro*, 796 F.3d at 531-32 (quotation omitted). "Therefore, the provisions of an insurance policy issued pursuant to a federal program must be strictly construed and enforced." *Id.* at 532 (quotation omitted). "In order to recover under an SFIP, FEMA regulations require strict compliance with the SFIP itself." *Constr. Funding, L.L.C.*, 636 F. App'x at 209 (citing *Marseilles*, 542 F.3d at 1057). This requirement is also incorporated into the terms of the SFIP, and "in order to file suit under the SFIP, the claimant must 'show prior compliance with all policy requirements.'" *Id.* (quoting *Marseilles*, 542 F.3d at 1055). Substantial compliance does not satisfy this requirement. *Id.* at 210 (citing *Marseilles*, 542 F.3d at 1056; *Gowland*, 143 F.3d at 953-54).

       3.    <u>Plaintiff's SFIP</u>

According to Section VII(D) of Plaintiff's SFIP, it

cannot be changed nor can any of its provisions be waived without the express written consent of the Federal Insurance Administrator. No action that we take under the terms of this policy can constitute a waiver of any of our rights.

*Id.* at 14.

Section VII(J)(4) of the SFIP requires, in relevant part, that the insured "[w]ithin 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you . . . ." SFIP [1-2] at 16. According to Section VII(M)(2),

> [i]f we reject your proof of loss in whole or in part you may:
> a. Accept such denial of your claim;
> b. Exercise your rights under this policy; or
> c. File an amended proof of loss, as long as it is filed within 60 days of the date of the loss.

*Id.* at 17.

In Section VII(K)(2), the SFIP provides that

> [o]ptions we may, in our sole discretion, exercise after loss include the following:
> * * *
> 2. We may request, in writing, that you furnish us with a complete inventory of the lost, damaged, or destroyed property, including:
>     a. Quantities and costs;
>     b. Actual cash values;
>     c. Amounts of loss claimed;
>     d. Any written plans and specifications for repair of the damaged property that you can reasonably make available to us; and
>     e. Evidence that prior flood damage has been repaired.

*Id.* at 16.

Section VII(P) addresses appraisals as follows:

> [i]f you and we fail to agree on the actual cash value of the damaged property so as to determine the amount of loss, either may demand an appraisal of the loss. In this event, you and we will each choose a

>competent and impartial appraiser within 20 days after receiving a written request from the other.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the State where the insured property is located.  The appraisers will separately state the actual cash value and the amount of loss to each item.  If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss.  If they fail to agree, they will submit their differences to the umpire.  A decision agreed to by any two will set the amount of actual cash value and loss.

*Id.* at 17.

To file suit against an insurer, the SFIP provides in Section VII(R) that

>[y]ou may not sue us to recover money under this policy unless you have complied with all the requirements of the policy.  If you do sue, you must start the suit within one year of the date of the written denial of all or part of the claim, and you must file the suit in the United States District Court of the district in which the insured property was located at the time of loss.  This requirement applies to any claim that you may have under this policy and to any dispute that you may have arising out of the handling of any claim under the policy.

*Id.*

B.  <u>Wright is entitled to summary judgment on Plaintiff's claims.</u>

Plaintiff maintains that it is entitled to recover amounts under the SFIP which Orlando did not include in his damage estimate.  The Complaint [1] reflects that Plaintiff's request for appraisal relates to Wright's January 17, 2013, letter "in which [Wright] did not agree with the overall Proof of Loss submitted by [Plaintiff]." Compl. [1] at 4.  Wright's January 17, 2013, letter rejected Plaintiff's original Proof of Loss because "it may not accurately reflect the covered damages sustained to covered property in this flood event."  Wright Letter [16-1] at 104.  Wright referred to Plaintiff's prior flood claims and cited items which "were not repaired and/or replaced prior to the current flood event."  *Id.*

12

In his Final Report, Orlando recommended that Wright deny coverage of certain items "due to lack of documentation showing repaired or replaced" from the prior flood losses.  Final Report [16-1] at 95.  Orlando included these items in his damage estimate, but assigned them a $0.00 value.  *Id.*  Based in part upon assigning these items a $0.00 value, Orlando's building damage estimate was $111,560.41 ACV and his contents estimate was $75,158.71 ACV, for a total of $186,719.12.  Damage Estimate [16-1] at 43.  Plaintiff's second Proof of Loss dated July 10, 2013, claimed the same amount, $186,719.12.  Proof of Loss [16-1] at 106.  Wright obtained a waiver from FEMA to accept the late Proof of Loss, and then tendered checks to Plaintiff consistent with these estimates.

  1.  <u>Plaintiff did not timely file its lawsuit.</u>

Under Plaintiff's SFIP, any suit against the insurer must be instituted "within one year of the date of the written denial of all or part of the claim . . . ." SFIP [1-2] at 17.  The Court finds that Plaintiff did not timely file its lawsuit under the SFIP, such that Wright is entitled to summary judgment.

Wright rejected Plaintiff's original Proof of Loss on January 17, 2013.  Wright Letter [16-1] at 104.  On June 30, 2013, Orlando issued a Final Report to Wright which recommended denial of certain items due to lack of documentation showing that those items had been repaired or replaced, and assigned those items a $0.00 dollar amount.  Final Report [16-1] at 94-95.  On July 10, 2013, Plaintiff executed another sworn Proof of Loss consistent with Orlando's damages estimate, *see id.*; Proof of Loss [16-1] at 106, and after obtaining a waiver from FEMA, Wright

tendered checks to Reef on July 12, 2013, consistent with Orlando's estimate and Plaintiff's new Proof of Loss, Checks [16-1] at 107-10.

Reef first sought to invoke appraisal one month later, on August 12, 2013, Reef Letter [16-1] at 113-14, which Wright denied on August 30, 2013. Wright Letter [161-1] at 117. On September 23, 2013, Plaintiff's public adjuster sent Wright correspondence requesting appraisal under the SFIP "based on the scope provided by your independent adjuster," Favre Letter [16-1] at 119, but Wright stood by its rejection of the requested appraisal, Aff. of Carolann Whitfield [16-1] at 4; Claim Log [16-1] at 18 (stating on October 22, 2013, "our letter of appraisal rejection still stands").

On April 10, 2014, Plaintiff's attorney sent a letter to Wright again requesting appraisal under the SFIP. Farmer Letter [16-1] at 122. Wright responded with a letter dated April 16, 2014, standing by its prior denial letters of January 17, 2013, and August 30, 2013. Wright Letter [16-1] at 127.

The Complaint [1] was not filed in this Court until January 22, 2016. Even considering the latest response by Wright on April 16, 2014, the present lawsuit was instituted well after the one-year statute of limitations contained in the SFIP had expired. *See* SFIP [1-2] at 16 (Section VII(R)). Wright is entitled to summary judgment on this basis.

Plaintiff argues that the one-year statute of limitations does not apply to its request for appraisal because a rejection of an invocation of appraisal does not constitute a "claim." Pl.'s Mem. [20] at 8-10. The Court recognizes that the United States Court of Appeals for the Fifth Circuit has held that "[n]othing in the

14

[appraisal] clause or the contract as a whole establishes a time limit for invoking the appraisal clause," provided that the party's actions have not amounted to waiver. *Dwyer v. Fid. Nat. Prop. & Cas. Ins. Co.*, 565 F.3d 284, 287-88 (5th Cir. 2009). However, the Court is not persuaded that *Dwyer* means that, once an insured attempts to invoke appraisal and such invocation is rejected by the insurer, the insured has an unlimited amount of time after that to file suit seeking to compel appraisal, as Plaintiff suggests. *See* Pl.'s Mem. [20] at 8-10.

While the parties have not cited any controlling authority on this point, the Court is persuaded that the SFIP's one-year statute of limitations bars Plaintiff's lawsuit under the particular facts of this case. The SFIP's one-year statute of limitations to file suit "applies to any claim that [the insured] may have under this policy and to any dispute that [the insured] may have arising out of the handling of any claim under the policy." Policy [1-2] at 17-18. This clause is broad enough to encompass Plaintiff's Complaint here, such that it is subject to the SFIP's one-year limitation period. *See id.* On the record before the Court, Plaintiff's theory is not consistent with a strict construction and enforcement of the SFIP, which is required because such claims are a direct charge on the public treasury. *See Ferraro*, 796 F.3d at 532.

Plaintiff argues that FEMA has "waived any time bar defense associated with Wright's January 13, 2013, rejection of Reef's November 29, 2012, Proof of Loss pursuant to 44 C.F.R. § 61.13(d)." Pl.'s Mem. [20] at 7-8. The Court is not of the view that FEMA's limited waiver in this case somehow excuses Plaintiff's late-filed lawsuit. FEMA's limited waiver provided that it was "for only the amount of the

15

loss and scope of the damages outlined in this [the July 10, 2013, Proof of Loss] request and otherwise does not waive the proof of loss or any other requirement of the Standard Flood Insurance Policy . . . ." E-Mail [22-1] at 1. Plaintiff's argument on this point is unavailing.

      2.    <u>Plaintiff has no right to appraisal on the facts of this case.</u>

Even if Plaintiff's lawsuit were deemed timely, Wright has shown that the appraisal provision of the SFIP is inapplicable here. The Fifth Circuit has explained that the appraisal provided for under the SFIP "is not an arbitration . . . ." *Dwyer*, 565 F.3d at 286-87. "Appraisal is only appropriate when the sole dispute involves the value of the agreed damages." *Jones v. Fid. Nat. Prop. & Cas. Ins. Co.*, No. Civ. A. G-10-289, 2013 WL 1572064, at *1 (S.D. Tex. Apr. 12, 2013) (citing *Dwyer*, 565 F.3d at 286-88).

The substance of the disagreement between Plaintiff and Wright is whether a dispute as to lack of payment under the SFIP for certain items, which had suffered prior flood losses but were not repaired, constitutes a question as to scope of coverage or as to the actual cash value of covered items. *See, e.g.,* Wright Letter [16-1] at 117 ("The outstanding issues with this claim cannot be resolved through the appraisal process until a scope of damage has been agreed upon by all parties."); Farmer Letter [16-1] at 123 ("the disagreement in this particular case between the Insurer and Insured as to 'value' of the damaged property appears to be synonymous with the 'scope' of the items covered because I do see where the Insurer is denying coverage under the terms of the Policy").

Plaintiff's position in opposition to summary judgment is that all coverage issues were resolved before it invoked appraisal, Pl.'s Mem. [20] at 11, and that "the only disagreement between Reef and Wright was with regards to the actual cash value and/or replacement costs of those identified in the Adjustment Report dated July 10, 2013, prepared by Mr. Orlando," *id.* at 12.  Plaintiff's characterization of this dispute as one over simply the value of the claim or the amount of the loss is in effect an attempt to circumvent the one-year statute of limitations by recasting a coverage question into one of loss amount for a covered claim.  Here, Plaintiff's claims are in substance a dispute regarding the denial of coverage under the SFIP.  As Wright notes in its Memorandum [16], "Plaintiff demands 'appraisal' without providing any information or evidence regarding the valuation of the disputed damages (i.e., the disputed price differences for a particular board, or paint, etc.)." Def.'s Mem. [16] at 8-9.  The Court concludes that the crux of the parties' dispute is a coverage issue, namely "whether Plaintiff repaired all prior flood damages before the August 28, 2012 flood loss." *Id.* at 9.

Having reviewed the record as a whole, the Court is not persuaded that this is a situation contemplated by the appraisal clause of the SFIP, that is where the insured and insurer "fail to agree on the actual cash value of the damaged property so as to determine the amount of loss . . . ." Policy [1-2] at 17.  Under the SFIP, once appraisal is invoked, the appraisers determine "the actual cash value and the amount of loss to each item." *Id.*  The "actual cash value" is defined by the SFIP as "[t]he cost to replace an insured item of property at the time of loss, less the value of its physical depreciation." *Id.* at 4.

17

The issue in this case is not the cost to replace certain insured items of property, but whether Plaintiff can recover for those items in the first instance under the terms of the SFIP because the items had suffered a prior flood loss and Plaintiff did not provide sufficient documentation showing that the items had been repaired or replaced. The Court finds that Wright's determination that Plaintiff could not recover for those particular items essentially amounts to a denial of coverage. Based upon a plain reading of the Policy and the facts of this particular case, Plaintiff cannot invoke the appraisal clause of the SFIP under these circumstances. *See id.* at 17.

3. <u>Plaintiff has not submitted a timely Proof of Loss as to the items for which it seeks appraisal.</u>

Even if this dispute were somehow covered by the SFIP's appraisal clause, Plaintiff has not submitted a timely supplemental Proof of Loss for any additional amount it claims it is still owed under the Policy. Aff. of Carolann Whitfield [16-1] at 5. "The regulations make strict compliance with the proof-of-loss requirement a condition precedent to suit." *Ferraro*, 796 F.3d at 532 (citing 44 C.F.R. pt. 61, app. A(1) art. VII(R)). "[A]n insured's failure to provide a complete, sworn proof of loss statement, as required by the flood insurance policy, relieves the federal insurer's obligation to pay what otherwise might be a valid claim." *Id.*

"In cases construing the terms of the SFIP, [the Fifth Circuit has] held that an insured must file a sworn proof of loss before seeking damages in excess of the amount paid by the insurer." *Kidd v. State Farm Fire & Cas. Co.*, 392 F. App'x 241, 244 (5th Cir. 2010) (citing *Marseilles*, 542 F.3d at 1055-56). Plaintiff failed to do so

18

...
...

in this case after it filed its narrowed, more limited July 10, 2013, Proof of Loss, pursuant to which the insurer tendered funds under the Policy, and which Plaintiff accepted. No timely Proof of Loss was submitted for the additional damages. This precludes any right of Plaintiff to recover additional funds under the SFIP. *See Ferraro*, 796 F.3d at 532; *Marseilles*, 542 F.3d at 1055-56; *Kidd*, 392 F. App'x at 244. Wright's Motion for Summary Judgment should be granted.

### III. CONCLUSION

To the extent the Court has not addressed any of the parties' arguments, it has considered them and determined that they would not alter the result. The Court concludes that Wright's Motion [15] for Summary Judgment should be granted, and that Plaintiff's claims should be dismissed.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [15] for Summary Judgment filed by Defendant Wright National Flood Insurance Company, formerly known as Fidelity National Indemnity Insurance Company, a Texas Corporation, is **GRANTED**, and Plaintiff Reef Enterprises, Inc.'s claims are **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 3rd day of March, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE